RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for BDJ Equities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re:                                              :    Chapter 11 (Involuntary)
                                                    :
Archimedean Solutions LLC,                          :    Case No.:  22-10599-lgb
                                                    :
                   Alleged Debtor.                  :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF MOTION OF BDJ EQUITIES LLC TO DISMISS**
**THE ALLEGED DEBTOR'S INVOLUNTARY CHAPTER 11 CASE**

    **PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the

"Motion") of BDJ Equities LLC ("BDJ"), by its counsel, Rubin LLC, for entry of an order

dismissing the above-captioned involuntary chapter 11 case of Archimedean Solutions LLC (the

"Alleged Debtor") pursuant to 11 U.S.C. § 1112(b) and 11 U.S.C. § 303(b) or, alternatively,

pursuant to 11 U.S.C. § 305(a)(1), shall be held before the Honorable Lisa G. Beckerman,

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, New York, New York 10003 on **June 16, 2022 at 10:00 a.m.**, or as soon thereafter

as counsel may be heard (the "Hearing").

    **PLEASE TAKE FURTHER NOTICE** that the Hearing will take place telephonically.

Parties wishing to participate at the Hearing must make arrangements through CourtSolutions at

www.court-solutions.com.  CourtSolutions telephonic appearance instructions can also be found

in General Order M-543 at www.nysb.uscourts.gov/sites/default/files/m543.pdf.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in

writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall

be filed with the Bankruptcy Court, and shall be served upon (a) counsel for BDJ, Rubin LLC, 345

Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.: Paul A. Rubin); (b) all parties who have

timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no

later than **June 9, 2022 at 4:00 p.m.** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received

by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may

enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
       May 25, 2022

RUBIN LLC

By:    */s/ Paul A. Rubin*
       Paul A. Rubin
       Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for BDJ Equities LLC*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for BDJ Equities LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11 (Involuntary)
                                              :
Archimedean Solutions LLC,                    :    Case No.: 22-10599-lgb
                                              :
                    Alleged Debtor.           :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION OF BDJ EQUITIES LLC TO DISMISS THE
ALLEGED DEBTOR'S INVOLUNTARY CHAPTER 11 CASE**

BDJ Equities LLC ("BDJ"), by its counsel, Rubin LLC, submits this motion (the "Motion")

for entry of any order dismissing the above-captioned involuntary chapter 11 case of Archimedean

Solutions LLC (the "Alleged Debtor") pursuant to sections 1112(b) and 303(b) of title 11 of the

United States Code (the "Bankruptcy Code"), or, alternatively, pursuant to section 305(a)(1) of the

Bankruptcy Code. In support of this Motion, BDJ respectfully represents as follows:

**PRELIMINARY STATEMENT**[1]

1.     This case represents the misuse of a powerful bankruptcy tool. Emberly Capital,

LLC ("Emberly"), as the sole petitioning creditor, signed and caused the Involuntary Petition to

be filed when it knew, or should have known, that it does not qualify to be a petitioning creditor

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them hereinafter.

that can commence an involuntary bankruptcy case against the Alleged Debtor. It is no coincidence that the Involuntary Petition was filed less than one hour before a scheduled foreclosure sale of the Alleged Debtor's sole significant asset in BDJ's four-year old pending Foreclosure Action.

2.    The Involuntary Petition should never have been filed, and Emberly and should not have been advised to file it. Emberly, as the holder of solely a non-recourse claim against collateral, is not an unsecured creditor of the Alleged Debtor and thus does not qualify to be a petitioning creditor under section 303(b) of the Bankruptcy Code. For this reason alone, the Involuntary Petition should be dismissed as a matter of law under prevailing caselaw in the Second Circuit.

3.    The Alleged Debtor's involuntary chapter 11 case may also be dismissed pursuant to either section 303 or 1112(b) because the Involuntary Petition was plainly filed in bad faith. Every applicable factor examined by courts to determine whether an involuntary petition was filed in bad faith or whether a chapter 11 case should be dismissed for cause (including because it was filed in bad faith) militates in favor of dismissal.

4.    Moreover, even if the Court would not dismiss this case as a bad faith filing by an ineligible petitioning creditor, it should nevertheless exercise its discretion to abstain and dismiss the Involuntary Petition under section 305(a)(1) of the Bankruptcy Code. There is no reason for this Court to exercise its jurisdiction over this involuntary chapter 11 case because there is no bankruptcy purpose that is served by the filing of the Involuntary Petition, and there is a forum available (the State Court) that can protect the interests of all parties. The rights and interests of all holders of claims against the Property can be litigated in the Foreclosure Action.

5.      Lastly, BDJ requests that the Court retain jurisdiction to consider the imposition of sanctions and award of damages against Emberly and its counsel for the patently bad faith filing of the Involuntary Petition for an improper purpose.  As set forth below, the egregious misuse of the bankruptcy process in this case warrants the imposition of sanctions.

## BACKGROUND

### The Loans to the Alleged Debtor

6.      On or about June 30, 2016, BDJ's predecessor-in-interest provided to the Alleged Debtor a loan in the principal amount of $3,300,000.00, evidenced by a note dated June 30, 2016 in the principal amount of $3,300,000.00 (the "First Note").  To secure payment of the First Note, the Alleged Debtor executed a mortgage dated June 30, 2016 in the principal amount of $3,300,000.00 (the "First Mortgage"), which was duly recorded.  The First Mortgage encumbers the real property known as 432 Hudson Street, New York, New York (the "Property").

7.      The First Note and the First Mortgage were assigned to BDJ by assignment of mortgage dated December 28, 2016 and duly recorded on January 9, 2017.

8.      Contemporaneously with the assignment of the First Note and the First Mortgage, BDJ provided to the Alleged Debtor a new loan, in the principal amount of $700,000.00, evidenced by a gap noted dated December 28, 2016 in the principal amount of $700,000.00 (the "First Gap Note").  To secure payment of the First Gap Note, the Alleged Debtor executed a gap mortgage encumbering the Property dated December 28, 2016 in the principal amount of $700,000.00 (the "First Gap Mortgage"), which was duly recorded on January 9, 2017.

9.      To further secure payment of the First Note and the First Gap Note, the Alleged Debtor executed an amended consolidated and restated note consolidating the First Note and the First Gap Note into a single obligation in the principal amount of $4,000,000.00 (the "First Consolidated Note").  To secure payment of the First Consolidated Note, the Alleged Debtor

executed a Consolidation, Extension, and Modification Agreement encumbering the Property in the principal amount of $4,000,000.00 (the "First Consolidated Mortgage"), which was duly recorded on January 9, 2017.

10.    On July 1, 2017, BDJ provided to the Alleged Debtor another loan, in the principal amount of $225,000.00, evidenced by a gap noted dated July 1, 2017 in the principal amount of $225,000.00 (the "Second Gap Note"). To secure payment of the Second Gap Note, the Alleged Debtor executed a gap mortgage encumbering the Property dated July 1, 2017 in the principal amount of $225,000.00 (the "Second Gap Mortgage"), which was duly recorded on July 12, 2017.

11.    To further secure payment of the aforementioned loans, the Alleged Debtor executed an amended consolidated and restated note consolidating the First Note, the First Gap Note, and the Second Gap Note into a single obligation in the principal amount of $4,250,000.00 (the "Second Consolidated Note"). To secure payment of the Second Consolidated Note, the Alleged Debtor executed a Consolidation, Extension, and Modification Agreement encumbering the Property in the principal amount of $4,250,000.00 (the "Second Consolidated Mortgage"), which was duly recorded on July 12, 2017.

12.    On July 23, 2018, BDJ provided to the Alleged Debtor yet another, loan in the principal amount of $275,000.00, evidenced by a gap noted dated July 23, 2018 in the principal amount of $275,000.00 (the "Third Gap Note"). To secure payment of the Third Gap Note, the Alleged Debtor executed a gap mortgage encumbering the Property dated July 23, 2018 in the principal amount of $275,000.00 (the "Third Gap Mortgage"), which was duly recorded on August 3, 2018.

13.    To further secure payment of the aforementioned loans, the Alleged Debtor executed an amended consolidated and restated note consolidating the First Note, the First Gap

Note, the Second Gap Note, the Third Gap Note, the First Consolidated Note, and the Second Consolidated Note into a single obligation in the principal amount of $4,500,000.00 (the "Note"). A copy of the Note is annexed as Exhibit A to the Declaration of Judah Wassner (the "Wassner Declaration") filed contemporaneously herewith in support of this Motion. To secure payment of the Note, the Alleged Debtor executed a Consolidation, Extension, and Modification Agreement encumbering the Property in the principal amount of $4,500,000.00 (the "Mortgage"), which was duly recorded on August 3, 2018. A copy of the Mortgage is annexed as Exhibit B to the Wassner Declaration.

14.     On July 23, 2018, Mary E. Kaplan ("Kaplan"), the Alleged Debtor's principal, executed an unlimited personal guarantee and pledge agreement (the "Guarantee"), guaranteeing payment of all amounts owed under the Note. A copy of the Guarantee is annexed as Exhibit C to the Wassner Declaration. The Note, the Mortgage, and the Guarantee are collectively referred to as the "Loan Documents."

15.     The Loan Documents provided, among other things, that upon the default in payment of any amounts under the loans, BDJ may institute foreclosure proceedings and sell the Property.

16.     The Alleged Debtor failed to make payments under the Loan Documents beginning on or about September 1, 2018, and thereafter. As a result, pursuant to the terms of the Loan Documents, one or more defaults have occurred. By reason of the occurrence of Alleged Debtor's defaults, BDJ exercised its rights and remedies under the Loan Documents.

**The Foreclosure Action**

17.     On October 17, 2018, BDJ commenced a foreclosure action in the Supreme Court of the State of New York, County of New York (the "State Court"), which was assigned index number 850287/2018 (the "Foreclosure Action"), to foreclose on the Mortgage.

18.     On June 24, 2019, the State Court granted BDJ's motion for a default judgment as against the Alleged Debtor and Kaplan.  On December 11, 2019, the State Court entered a Decision and Order, and Judgment of Foreclosure and Sale (the "<u>Foreclosure Judgment</u>"), which denied the Alleged Debtor and Kaplan's motion to vacate the default judgment, and awarded BDJ a judgment of foreclosure and sale.  A copy of the Foreclosure Judgment is annexed as <u>Exhibit D</u> to the Wassner Declaration.

19.     The Foreclosure Judgment confirmed the amounts calculated in the Referee's Report to be paid to BDJ from the sale of the Property:  $5,578,786.88 with interest at the note rate from July 31, 2019 until entry of judgment, together with any advances made by BDJ, and attorney's fees in the amount of $24,298.71.

20.     Kaplan died on November 15, 2021.

21.     On or about March 30, 2022, BDJ served a notice of sale of the Property by public auction pursuant to the Foreclosure Judgment, with the auction to occur on May 11, 2022 at 2:15 p.m.  A copy of the notice of sale of the Property is annexed as <u>Exhibit E</u> to the Wassner Declaration.  As described further below, however, the auction did not proceed because Emberly filed an involuntary chapter 11 petition against the Alleged Debtor at 1:39 p.m. on May 11, 2022, less than an hour before the auction of the Property was scheduled to occur.

**<u>The Emberly Mortgage</u>**

22.     Approximately eight months after BDJ commenced the Foreclosure Action, the Alleged Debtor executed a mortgage encumbering the Property dated June 19, 2019 in the principal amount of $525,000.00 (the "<u>Emberly Mortgage</u>") in favor of Emberly.  A copy of the Emberly Mortgage is annexed as <u>Exhibit F</u> to the Wassner Declaration.  The Emberly Mortgage was not recorded until January 17, 2020.

23.     The Emberly Mortgage states that it was given to Emberly as additional collateral to secure payment of indebtedness owed to Emberly **by Kaplan** under a certain Leasehold Mortgage and Security Agreement dated July 19, 2019 encumbering a different property located at 25 Washington Square North, New York, New York.

24.     Pursuant to the *Affidavit Under Section 255 of Article II of the Tax Law of the State of New York* (the "Section 255 Affidavit"), which is annexed to the Emberly Mortgage, Emberly states as follows:

> [T]he [Emberly] Mortgage is given for the purpose of further securing the same principal indebtedness which is or under any contingency may be secured by the above mentioned Leasehold Mortgage and Security Agreement and that such additional and collateral [Emberly Mortgage] **does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under and contingency may be secured by the said Leasehold Mortgage and Security Agreement**.

Section 255 Affidavit (emphasis added).

25.     Thus, it is clear that, under the Emberly Mortgage, Emberly has recourse only to the Property and Emberly's claims under the Emberly Mortgage are non-recourse as to the Alleged Debtor.

**The Involuntary Petition**

26.     On May 10, 2022 at 10:30 p.m., counsel for BDJ in the Foreclosure Action received a text message through WhatsApp from Steve Rosenberg ("Rosenberg"), a principal of Emberly. A copy of the WhatsApp message from Rosenberg is annexed as Exhibit A to the Declaration of Jeffrey Fleischmann (the "Fleischmann Declaration") filed contemporaneously herewith in support of this Motion.

27.     In the WhatsApp message, Rosenberg (i) advised counsel that he was contacted by the owners of the Property or "whoever is handling there [*sic*] affairs," (ii) stated that he did not

want the foreclosure sale to proceed, and (iii) requested that the foreclosure sale be adjourned for a month in order to "figure out a deal."  *See* Fleischmann Decl. Exh. A.

28.    On May 11, 2022, BDJ's counsel in the Foreclosure Action received several emails from Steven Kirkpatrick ("Kirkpatrick"), a partner at the law firm of Romer Debbas LLP, which represents the Alleged Debtor and Kaplan in the Foreclosure Action.  Copies of the emails from Kirkpatrick are annexed as Exhibit B to the Fleischmann Declaration.

29.    At 1:10 p.m. on May 11, 2022, sixty-five minutes before the scheduled foreclosure sale, Kirkpatrick emailed counsel his thoughts on a possible settlement of the disputes between BDJ and the Alleged Debtor without the need to proceed with the foreclosure sale.  BDJ would not agree to adjourn the foreclosure sale.

30.    Despite not qualifying to be a petitioning creditor because it only has a non-recourse claim against the Property and thus is not an unsecured creditor of the Alleged Debtor, Emberly took matters into its own hands to stop the foreclosure sale of the Property.  On May 11, 2022, less than one hour before the foreclosure sale was scheduled to commence, Emberly signed and caused to be filed an involuntary petition (the "Involuntary Petition") commencing an involuntary chapter 11 case against the Alleged Debtor.

31.    At 1:52 p.m. that same day, Kirkpatrick sent counsel another email informing him of the filing of the Involuntary Petition and attached a screenshot of a *Notice of Involuntary Bankruptcy Case Filing*, which showed that the involuntary chapter 11 case was filed thirteen minutes earlier, at 1:39 p.m. on May 11, 2022.  In that email attaching the notice of the bankruptcy filing, Kirkpatrick stated that "[w]e continue to want to get this resolved along the lines discussed and hopefully this will give a bit of breathing space and a mechanism to get it done."  *See* Fleischmann Decl. Exh. B.

8

32.     Emberly is the sole petition creditor on the Involuntary Petition, and Emberly alleges in the petition that it "is eligible to file this petition under 11 U.S.C. § 303(b)."  Emberly, through Steve Rosenberg, signed the Involuntary Petition at the signature block, undeterred by the conspicuous warning on the Involuntary Petition just above his signature:

> **WARNING**—Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. …
>
> I have examined the information in this document and have a reasonable belief that the information is true and correct.

33.     Counsel for Emberly, Brett Silverman, affixed his electronic signature to the Involuntary Petition and filed, or caused to be filed, the Involuntary Petition with this Court.

34.     The filing of the Involuntary Petition triggered the automatic stay, preventing the foreclosure sale from proceeding as scheduled.

35.     Following the commencement of the Alleged Debtor's involuntary case, BDJ retained bankruptcy counsel.  Counsel promptly delivered a letter to Emberly and its counsel directing Emberly to immediately withdraw the Involuntary Petition because it had been filed in bad faith and for in improper purpose.  A copy of bankruptcy counsel's May 18, 2022 letter to Emberly and its counsel is annexed as <u>Exhibit G</u> to the Wassner Declaration.

36.     To date, no action seeking dismissal of this involuntary case has been taken by Emberly or its counsel.

## <u>ARGUMENT</u>

**A.     The Court Should Not Enter An Order For Relief And Should Dismiss The Involuntary Petition Because Emberly Does Not Qualify As A Petitioning Creditor Under Section 303(b) Of The Bankruptcy Code**

37.     Section 303(b) of the Bankruptcy Code provides, in relevant part, that "[a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a

petition under chapter 7 or 11 of this title—(1) by three or more entities, each of which is … a **holder of a claim against such person** …; (2) if there are fewer than 12 such holders … by one or more such holders." 11 U.S.C. § 303(b) (emphasis added). Thus, to qualify and have the right to file and involuntary petition against an alleged debtor, a petition creditor must be a holder of a claim against the alleged debtor. *See CC Britain Equities v. Allen-Main Assocs. L.P. (In re Allen-Main Assocs. L.P.)*, 223 B.R. 59, 61 (2d Cir. 1998) ("In order to be eligible to file an involuntary petition, Code § 303(b) requires that an entity have a claim against 'such person,' *i.e.* the alleged debtor, which is neither contingent as to liability nor subject to a bona fide dispute.").

38.     The caselaw is clear that holders of non-recourse claims do not qualify to be petitioning creditors under section 303(b) of the Bankruptcy Code. *See In Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576 (Bankr. S.D.N.Y. 2018) (hereinafter "*Taberna*") (petitioning creditors with claims based on nonrecourse notes issued by the putative debtor did not hold clams against the putative debtor and therefore did not qualify to be petitioning creditors under section 303(b) of the Bankruptcy Code); *see also In re Allen-Main Assocs. L.P.*, 223 B.R. at 62 ("With respect to a nonrecourse creditor in a chapter 7 case, the creditor's only claim or 'right to payment' is limited to the value of its collateral; there is no right to recover payment on any deficiency.") (citations omitted); *In re Green*, Case No. 06-11761, 2007 WL 1093791, *8 (Bankr. W.D. Tex. Apr. 9, 2007) ("If a claim against property was to be included [under section 303(b)(1)], Congress clearly could have said so. It did not. … Therefore, non-recourse secured creditors may not be counted.").

39.     This Court addressed the same situation, procedurally and substantively, in the *Taberna* case. *Taberna* was also an involuntary chapter 11 case, and the parties seeking to dismiss the involuntary petition were non-petitioning creditors. In that case, before the Court had entered

an order for relief, the non-petitioning creditors sought a judgment from the Court that the petitioning creditors failed to establish their *prima facie* case that they had met the requirements of section 303(b) to qualify as petitioning creditors, as well as to seek dismissal under section 1112(b) or abstention under section 305 of the Bankruptcy Code.

40.    After determining that the notes issued by the alleged debtor held by the petitioning creditors were non-recourse, the Court dismissed the involuntary petition, holding that "because the Petitioning Creditors hold claims only against the Collateral, and do not hold claims against [the putative debtor], they fail to meet the requirement under section 303(b) of the Bankruptcy Code." *Taberna* at 597.  In its decision, the Court also made the following observation: "In holding that a non-recourse secured creditor may not act as the sole petitioning creditor under § 303(b), the court notes that for the past one hundred years, U.S. bankruptcy statutes have required creditors filing involuntary petitions to hold unsecured debt." *Id.* (quotation marks omitted) (quoting *In re Allen-Main Assocs. L.P.*, 218 B.R. 278, 280 (Bankr. D. Conn. 1998)).

41.    In this case, Emberly's claim arises under the Emberly Mortgage, which is solely a junior lien against the Property and is non-recourse against the Alleged Debtor.  Indeed, the Section 255 Affidavit annexed to and filed with the Emberly Mortgage expressly states that no new indebtedness or obligation is being created by the Emberly Mortgage—the mortgage serves only as additional collateral to secure ***Kaplan's*** obligations to Emberly under a completely separate and different loan transaction.  Accordingly, Emberly has no claim against the Alleged Debtor.

42.    As the holder of solely a non-recourse claim that can recover only against collateral, Emberly is not an unsecured creditor of the Alleged Debtor and thus does not qualify to be a petitioning creditor under section 303(b) of the Bankruptcy Code.  The *Taberna* case is directly on point, and the reasoning and holding of this Court in *Taberna* should be applied here.  As a matter

of law, the Court should refrain from entering an order for relief and should dismiss the Involuntary Petition.

**B.     The Court Should Dismiss The Involuntary**
**        Petition Because It Was Filed In Bad Faith**

43.     The Involuntary Petition should also be dismissed because it was filed in bad faith. Involuntary petitions have serious consequences for alleged debtors.  Involuntary cases must be filed in good faith.  *See In re Abir*, 2007 WL 4556909, at *4 (Bankr. S.D.N.Y. Dec. 20, 2007) ("It is well-established that courts have authority to dismiss an involuntary chapter 11 petition filed in bad faith … ."); *Basin Elec. Power Coop v. Midwest Processing Co.*, 769 F.2d 483, 486 (8th Cir. 1985) (finding that bad faith may be cause for dismissal of a petition); *In re Tichy Elec. Co., Inc.*, 332 B.R. 364, 373 (Bankr. N.D. Iowa 2005) ("Although the Bankruptcy Code does not explicitly require that a bankruptcy petition be filed in good faith, the Eighth Circuit has found that the Code contains an implicit good faith requirement."); *In re Bock Transp. Inc.*, 327 B.R. 378, 381 (8th Cir. BAP 2005) (finding that Bankruptcy Code has implicit requirement of good faith).

44.     Courts in the Second Circuit have employed different tests to determine whether an involuntary case was commenced in bad faith:

> Although the Second Circuit has not selected a particular test to determine the presence of bad faith, it has identified a variety of tests that have been utilized by the judiciary:  Some courts have used an ***"improper use" test***, which finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum.  … Other courts have applied an ***"improper purpose" test***, where bad faith exists if the filing of the petition was motivated by ill will, malice, or a desire to embarrass or harass the alleged debtor. … A third line of cases employs an ***objective test for bad faith*** based on what a reasonable person would have believed. … Finally … a number of courts have sought to model the bad faith inquiry on the standards set forth in ***Bankruptcy Rule 9011***.

*In re CNG Foods LLC*, 2020 WL 4219679 at \*10-\*11 (Bankr. E.D.N.Y. July 13, 2020) (quotations, citations omitted, emphasis in original) (citing *Lubow Mach. Co., Inc. v. Bayshore Wire Prods Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 105-06 (2d. Cir. 2000).

45.   Most courts have adopted a "totality of the circumstances" test.  *See In re CNG Foods LLC*, 2020 WL 4219679 at \*11 (citing *In re Anmuth Holdings LLC*, 600 B.R. 168, 191 (Bankr. E.D.N.Y. 2019)).  In applying the test, courts consider the following non-exclusive factors:

(i)      whether the creditors satisfied the statutory criteria for filing the petition;

(ii)     whether the involuntary petition was meritorious;

(iii)    whether the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing;

(iv)    whether there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets;

(v)     whether the filing was motivated by ill will or a desire to harass;

(vi)    whether the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same;

(vii)   whether the filing was used as a tactical advantage in pending actions;

(viii)  whether the filing was used as a substitute for customary debt-collecting procedures; and

(ix)    whether the filing had suspicious timing.

*Id.* (citing *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 336 (3d Cir. 2015)).

46.   Here, every one of the applicable factors of the totality of the circumstances test points to a blatant bad faith filing:  (i) as set forth above, Emberly holds only a non-recourse claim against the Property and does not qualify to be a petitioning creditor under section 303(b) of the Bankruptcy Code; (ii) the Involuntary Petition, filed by a non-qualifying petitioning creditor, is meritless, (iii) Emberly and its counsel do not appear to have made ***any*** inquiry into the relevant

facts and pertinent law before filing the single-creditor Involuntary Petition; (iv) there is no evidence of preferential payments or dissipation of the Alleged Debtor's assets; (v) the Involuntary Petition was filed solely for the purpose of frustrating BDJ's exercise of its rights and remedies in the Foreclosure Action and to stymie the foreclosure sale of the Property; and (vi) the timing of the filing of the Involuntary Petition (less than one hour before the scheduled foreclosure sale) leaves no doubt as to the bad faith intent of Emberly in filing the patently deficient Involuntary Petition.

47.     In this case, the complete lack of merit to the Involuntary Petition alone is sufficient to warrant dismissal of the Involuntary Petition as a bad faith filing.  *See In re Anmuth Holdings LLC*, 600 B.R. at 197 ("In determining bad faith under the totality of the circumstances, courts consider whether the involuntary petition was meritorious and whether the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing.  ***Where an involuntary petition has no basis in law or fact, the intent of the creditor is malicious***.") (emphasis added); *In re Grossinger*, 268 B.R. 386, 388 (Bankr. S.D.N.Y. 2001) ("The involuntary filing was utterly baseless.  Gottenger's claim was a simple, nominal claim which he should have pursued in state court.  To use an involuntary filing as a tactic to 'work it out' with one's alleged obligor is an abuse of the bankruptcy process and a violation of 11 U.S.C. § 303.").

48.     This Court in *In re Grossinger* also noted the following regarding the harm to secured creditors in considering dismissal of involuntary petitions for bad faith:

> The potential for collusive filing exists where a 'friendly' creditor files an involuntary petition with no intention of serving the debtor or seeking an order for relief but with the intent of frustrating the rights of a secured creditor or any other creditor whose state court remedies are stayed until the case is closed.  In such a case there may be no impact on the debtor … .  But creditors may be harmed because the mere filing of an involuntary petition invokes the automatic stay.  In the case of a non-collusive filing, aside from the fact that other creditors will be subject to the automatic stay, a sham

14

> involuntary filing … may be used by creditors as an improper bargaining
> tactic

*In re Grossinger*, 268 B.R. at 387.

49.     Here, the Court should not permit Emberly to abuse the bankruptcy process by

filing a patently improper Involuntary Petition in bad faith solely to invoke the automatic stay and

frustrate BDJ's legitimate exercise of its remedies against the Alleged Debtor and the Property.

Emberly did not extend credit to the Alleged Debtor and it recorded its mortgage long after BDJ

had commenced its Foreclosure Action.   In an ill-conceived effort to thwart the Foreclosure

Action, Emberly filed the Involuntary Petition at the last minute.  The Involuntary Petition does

not serve a valid bankruptcy purpose.  BDJ is harmed by the bad faith filing of the Involuntary

Petition, and the Involuntary Petition should be dismissed.

**C.     The Alleged Debtor's Involuntary Chapter 11 Case Should Be**
**        <u>Dismissed For Cause Under Section 1112(b) of the Bankruptcy Code</u>**

50.     BDJ also seeks dismissal of the Alleged Debtor's involuntary chapter 11 case for

cause under section 1112(b) of the Bankruptcy Code.

51.     Section 1112 of the Bankruptcy Code provides that a chapter 11 case may be

dismissed "for cause."  Subsection (b)(1) thereof provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party
> in interest, and after notice and a hearing, the court shall convert a case
> under this chapter to a case under chapter 7 or dismiss a case under this
> chapter, whichever is in the best interests of creditors and the estate, for
> cause unless the court determines that the appointment under section
> 1104(a) of a trustee or an examiner is in the best interests of creditors and
> the estate.

11 U.S.C. § 1112(b)(1).

52.     It is well-settled that "cause" for dismissal purposes includes a filing made in bad

faith.  *In re C-TC 9th Ave. P'ship v. Norton Movant (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304,

1310 (2d Cir. 1997); *see also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal,*

15

*Inc.)*, 931 F.2d 222, 227-28 (2d Cir. 1991); *In re SGL Carbon Corp.*, 200 F.3d 154, 160-61 (3d

Cir. 1999) (compiling cases); *In re Schur Mgmt. Co.*, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005).

"An important factor to consider in determining whether a Chapter 11 case was initiated in good

faith is whether the reorganization effort essentially involves a two-party dispute which can be

resolved in a non-bankruptcy forum."  *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y.

1988).

53.     Additionally, the Second Circuit has found the following eight factors to be

indicative of a bad faith filing giving rise to "cause" for dismissal:

- a.    The debtor has only one asset;

- b.    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

- c.    The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

- d.    The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in a pending state court action;

- e.    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

- f.    The debtor has little or no cash flow;

- g.    The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

- h.    The debtor has no employees.

*See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311; *see also, In re Phoenix Piccadilly, Ltd.*, 849

F.2d 1393, 1394-95 (11h Cir. 1988); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr.

S.D.N.Y. 2001); *234-6 West 22nd St. Corp.*, 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997).

54.     Section 1112(b) applies in involuntary chapter 11 cases as well as voluntary cases.

*See Taberna* (finding additional basis for dismissal of involuntary chapter 11 for cause under

section 1112(b) in motion brought by non-petitioning creditors); *see also In re Global Ship Sys., LLC*, 391 B.R. 193, 202 (Bankr. S.D. Ga. 2007) (non-petitioning creditor may seek to dismiss involuntary chapter 11 case under section 1112(b) and court may consider whether petitioning creditors had standing to commence involuntary case as an element of whether there is cause to dismiss or whether the case was filed in bad faith).

55.     Here, the involuntary chapter 11 case was clearly filed by Emberly in bad faith under section 1112(b) of the Bankruptcy Code.  Every one of the applicable *C-TC* factors points to a bad faith filing:

a.  the Alleged Debtor's sole significant asset is the Property;

b.  BDJ is not aware of any unsecured creditors of the Alleged Debtor;

c.  the Property is the subject of the pending Foreclosure Action;

d.  The Alleged Debtor's financial condition is, in essence, a two-party dispute between the debtor and its secured creditors which can be resolved in the pending Foreclosure Action; and

e.  the timing of the Involuntary Petition (*i.e.*, less than one hour before the scheduled foreclosure sale of the Property) evidences an intent to frustrate BDJ's legitimate efforts to foreclose on the Property.

56.     As this is a clear-cut case of a bad faith filing under the *C-TC* factors, the Involuntary Petition should be dismissed on this basis as well.

**D.     Even If An Order For Relief Could Be Entered, Abstention Under Section 305 Of The Bankruptcy Code Is Warranted**

57.     Although BDJ submits that this involuntary case should be dismissed on the grounds asserted above, even if the Court were not inclined to dismiss the Involuntary Petition for the reasons stated above, this Court should exercise its discretion and abstain and dismiss the case.  Section 305(a)(1) provides for abstention as follows:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or abstention.

11 U.S.C. § 305(a)(1).

58.     Courts consider a number of factors in determining whether a case should be dismissed under section 305(a)(1), including the following:

(1) economy and efficiency of administration; (2) whether another forum is available to protect the interest of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and creditors are able to work out a less expensive out-of-court arrangement which better serves all interest in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Grigoli*, 151 B.R. 314, 320 (Bankr. E.D.N.Y. 1993).

59.     Here, every relevant factor militates in favor of the Court's abstention and dismissal of the Involuntary Petition. First, allowing the Foreclosure Action to continue in the State Court would further the goal of judicial economy. The Foreclosure Action has been pending in the State Court for nearly four years; economy and efficiency of administration clearly would be better served by abstention. This factor favors abstention. Second, the Foreclosure Action pending in the State Court is an available forum that can protect the interests of all parties involved—the Alleged Debtor, BDJ, Emberly and any other secured creditors—particularly with respect to those parties asserting liens on the Property, such as Emberly. This factor favors abstention. Third, federal proceedings are not necessary to reach a just and equitable solution, because the Foreclosure Action involves solely state law issues and remedies. This factor favors abstention.

Lastly, Emberly cannot justify seeking bankruptcy jurisdiction because the Involuntary Petition was not filed for a bankruptcy purpose—it was filed solely to frustrate BDJ and delay the foreclosure sale of the Property. This factor also favors abstention.[2]

60. Based on the foregoing, there is no fact that militates in favor of the Court's exercise of discretion over the Alleged Debtor's involuntary chapter 11 case. Accordingly, the Court should abstain and dismiss the case pursuant to section 305(a)(1) of the Bankruptcy Code.

**E.    The Court Should Retain Jurisdiction To Consider Imposition Of Sanctions Against Emberly And Its Counsel**

61. BDJ further respectfully requests that the Court, after dismissing the Involuntary Petition, should retain jurisdiction to consider the imposition of sanctions and an award of damages against Emberly and its counsel for the blatantly improper and bad faith filing of the Involuntary Petition.

62. BDJ is entitled to compensatory and punitive damages from Emberly and its counsel because they filed the Involuntary Petition in bad faith and the filing constitutes an abuse of the bankruptcy process. The Second Circuit has recognized that there are multiple approaches for determining "bad faith" for purposes of awarding damages under section 303(i)(2), and damages and sanctions against petitioning creditors should be awarded if any one of the bad faith tests is satisfied. *See, e.g., In re Bayshore Wire Prods. Corp.*, 209 F.3d at 106 ("Like the Bankruptcy Court, we see no need to choose among the various tests for bad faith in disposing of this case…"); *In re Cantico Intern, Ltd.*, 2008 WL 755022 at *4 (Bankr. S.D.N.Y. Mar. 19, 2008) (imposing sanctions after finding that "objective test" and "Rule 9011 test" were satisfied); *In re Grossinger*, 268 B.R. at 389-90 (awarding damages and sanctions under "improper use" test); *In*

---

[2] Factors four through six are not applicable in this case.

*re Stern*, 268 B.R. 390, 394-95 (Bankr. S.D.N.Y. 2001) (assessing sanctions after finding that "improper purpose" test was satisfied).

63.    Sanctions may be imposed against a petitioning creditor and its attorney where, as here, an involuntary petition is improperly filed to delay a foreclosure sale. *See, e.g., In re Stern*, 268 B.R. at 394-95 (upon court's *sua sponte* order to show cause, sanctioning petitioning creditors who filed an involuntary chapter 11 in bad faith to delay foreclosure sale to allow petitioning creditors to negotiate with bank to purchase the property at a better price).

64.    Moreover, Bankruptcy Rule 9011 provides, in relevant part, that "[b]y presenting to the court (whether by signing, *filing*, submitting, or later advocating) a *petition*, pleading, written motion, or other paper, an attorney … is certifying that … it is not being presented for any improper purpose, … [and] the allegations and other factual contentions have evidentiary support or … are likely to have evidentiary support *after a reasonable opportunity for further investigation or discovery*." FED. R. BANKR. P. 9011(b) (emphasis added).

65.    It was unreasonable for Emberly and its counsel to file the Involuntary Petition without having conducted the necessary investigation to determine whether Emberly was even a creditor *of the Alleged Debtor*. *See In re Grossinger*, 268 B.R. at 389 (Bankr. S.D.N.Y. 2001) (sanctioning petitioning creditor and attorney for filing involuntary petition in bad faith, and noting "An attorney who undertakes to represent his client as a petitioning creditor in an involuntary case must, at the very least, read and comply with the applicable section of the Bankruptcy Code. Failure to do so manifests bad faith, especially on the part of a bankruptcy specialist with years of experience. … Filing an involuntary petition for an improper purpose also manifests bad faith.").

66.    Even if Emberly's counsel were to argue that there were exigent circumstances, it would not absolve him of his obligations under Rule 9011. *See In re Parikh*, 508 B.R. 572, 579

(Bankr. E.D.N.Y. 2014) (awarding sanctions against debtor's attorney for failure to conduct reasonable investigation prior to filing bankruptcy case) ("The problem is, the information included in those filings was incomplete and/or inaccurate, and if [counsel] had conducted a reasonable inquiry, he would have known that. *The emergency nature of a bankruptcy filing does not excuse compliance with Rule 9011.*") (emphasis added).

67.    Given the blatant bad faith that has occurred in connection with the filing of the Involuntary Petition, BDJ respectfully submits that it would be appropriate for the Court to retain jurisdiction to consider sanctions and an award of damages to compensate BDJ and to deter Emberly and similar parties contemplating abuses of the bankruptcy process by filing involuntary petitions in bad faith.

## <u>CONCLUSION</u>

68.    For all the reasons set forth herein, BDJ respectfully request that this Court (i) refrain from entering an order for relief and instead dismiss the Alleged Debtor's involuntary chapter 11 case or pursuant to sections 303(b) and/or 1112(b) of the Bankruptcy Code, or (ii) in the alternative, abstain from and dismiss the involuntary chapter 11 case pursuant to section 305(a)(1) of the Bankruptcy Code, and (iii) retain jurisdiction to consider the imposition of sanctions against Emberly and its counsel for the bad faith filing of the Involuntary Petition, and grant BDJ such other relief as may be just and proper.

Dated:  New York, New York
       May 25, 2022

                    RUBIN LLC

                    By: _____*/s/ Paul A. Rubin*_____
                        Paul A. Rubin
                        Hanh V. Huynh

                    345 Seventh Avenue, 21st Floor
                    New York, New York 10001
                    Tel: 212.390.8054
                    prubin@rubinlawllc.com
                    hhuynh@rubinlawllc.com

                    *Counsel for BDJ Equities LLC*